AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

**FILED**
10/20/2023
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  vyc  DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.  23MJ8790
)
Black Apple iPhone )
Model: 13 )
With no identifying numbers or features )

### APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent-Intelligence Miguel Flores incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent-Intelligence Miguel Flores
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: ___10/20/2023___

*Judge's signature*

City and state:  El Centro, California       HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**          Black Apple iPhone
            Model: 13
            With no identifying numbers or features
            Seized from Adrien Jerel KING
            **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 27, 2023, up to and including September 27, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Miguel Flores, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:** Black Apple iPhone
Model: 13
With no identifying numbers or features
Seized from Adrien Jerel KING
**(Target Device #1)**

**A-2:** Turquoise OPPO Cellphone
Model: A57
With no identifying numbers or features
Seized from Jose Cristian DE JESUS-Salas
**(Target Device #2)**

**A-3:** Blue Motorola
Model: Moto E
With no identifying numbers or features
Seized from Juan Pablo HERNANDEZ-Rosales
**(Target Device #3)**

as further described in Attachments A-1 to A-3, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Adrien Jerel KING (KING) transportation of illegal aliens Antonio CAMARGO-Pasilla (CAMARGO), Jose Cristian DE JESUS-Salas (DE JESUS), and Juan Pablo HERNANDEZ-Rosales (HERNANDEZ) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target

Devices were seized from KING and the Material Witnesses on or about September 26, 2023, incident to the arrest of KING and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since December 4, 2006, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

- a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

- b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

- c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

- d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

- e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

10. On September 26, 2023, BPA-Is assigned to the El Centro Sector Intelligence Anti-Smuggling Unit Group #2 (ASU) were conducting surveillance in Calexico, California. At approximately 3:15 p.m., Supervisory BPA-I Clinton observed a white Honda CRV (Honda), bearing California license plates, parked on Holt Avenue in Holtville, California. SBPA-I Clinton immediately recognized this Honda as a vehicle previously identified as involved in alien smuggling from prior surveillance.

11. After observing the Honda parked in Holtville, SBPA-I Clinton informed additional ASU Agents of the location of the Honda and initiated static surveillance. After approximately thirty minutes, ASU Agents watched as the Honda departed Holtville and traveled towards Yuma, Arizona by way of Highway 115 and Interstate-8 (I-8). ASU Agents informed uniformed line BPAs via service radio of the travel pattern and BPAs set up with Vehicle Immobilization Devices (VID) further east on the eastbound lanes of I-8 in case the Honda failed to yield.

12. As the Honda traveled eastbound on I-8, a Calexico Border Patrol Station Remote Video Surveillance System operator (841) observed three individuals run towards I-8 from the United States/Mexico International Boundary Fence (IBF) east of the Gordons Well Exit. ASU Agents kept constant visual on the Honda while 841 kept constant visual on the individuals running north from the IBF towards I-8. The individuals ran to the south side of I-8 and attempted to conceal themselves in a bush. BPA-I Torres observed the Honda slow down, pull over, and come to a complete stop where the individuals were hiding in the bush before the three individuals ran to and load up into the Honda. Agents observed the Honda continue eastbound on I-8 towards Yuma.

13. BPA-I Heipt, with emergency lights and sirens of his unmarked service vehicle engaged, and SBPA-I Clinton attempted to perform a vehicle stop on the Honda.

However, the Honda continued eastbound on I-8 at a high rate of speed. While attempting the vehicle stop, BPA-I Heipt observed the driver of the Honda turn around and begin moving his hand up and down in a motion as if he was instructing the three individuals in the back of the Honda to duck down and hide.

14. The Honda failed to yield as it approached the A7 Bridge when SBPA Mills deployed a VID and the front driver's side tire was successfully immobilized. After successfully immobilizing the tire of the Honda, it pulled over to the side of the road and came to a complete stop. BPA-I Heipt approached the Honda with Border Patrol markings and insignia fully visible and identified himself as a BPA. BPA-I Heipt questioned the driver, later identified as KING, as to his citizenship. KING stated that he was a United States citizen. BPA-I Heipt then questioned the three individuals, later identified as Antonio CAMARGO-Pasilla, Jose Cristian DE JESUS-Salas and Juan Pablo HERNANDEZ-Rosales, as to their citizenship. All three individuals admitted to being in the United States illegally and to being citizens of Mexico. The three individuals admitted that they made the illegal entry by going under the border fence in an area other than through a designated Port of Entry. KING, CAMARGO, DE JESUS, and HERNANDEZ were placed under arrest and were transported to the Calexico Border Patrol Station for processing.

15. Material Witness CAMARGO stated he is a citizen of Mexico. CAMARGO stated he does not have any legal documents allowing him to live, work, or remain in the United States legally. CAMARGO stated he made arrangements to be smuggled into the United States for $10,000 with a destination of Los Angeles, California. CAMARGO stated he was verbally informed by the smugglers beforehand that the vehicle picking him up would be a white SUV. CAMARGO stated the driver was an African American man with a beard, wearing a cap, and a black t-shirt.

16. Material Witness DE JESUS stated he is a citizen of Mexico. DE JESUS stated he does not have any legal documents allowing him to live, work, or remain in the United States legally. DE JESUS stated he made arrangements to be smuggled into the

1 United States for $9,000 with a destination of Montana. DE JESUS stated he was picked up by the vehicle he was shown beforehand by the smugglers.

17. Material Witness HERNANDEZ stated he is a citizen of Mexico. HERNANDEZ stated he does not have any legal documents allowing him to live, work, or remain in the United States legally. HERNANDEZ stated his brother made arrangements for him to be smuggled into the United States for $11,000 with a destination of Florida.

18. During a search incident to arrest of KING, and the material witnesses, a Black iPhone 13 (Target Device #1) was found on KING'S person by BPA-I L. Heipt. KING claimed ownership of this cellphone and it was seized as evidence. BPA-I H. Torres located a turquoise Oppo Cellphone (Target Device #2) on DE JESUS'S person. One Blue Motorola Cellphone (Target Device #3) was also located by BPA-I H. Torres on HERNANDEZ'S person. DE JESUS and HERNANDEZ claimed ownership of their respective cell phone and they were seized as evidence.

19. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on August 27, 2023, up to and including September 27, 2023, the day after the arrest of KING and the Material Witnesses.

**METHODOLOGY**

20. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and

rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

23. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that KING and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Miguel Flores
Border Patrol Agent-Intelligence
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P.4.1 by telephone on this 20th day of October 2023.

_____  8:16 a.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

9

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**          Black Apple iPhone
             Model: 13
             With no identifying numbers or features
             Seized from Adrien Jerel KING
             **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**  Turquoise OPPO Cellphone
Model: A57
With no identifying numbers or features
Seized from Jose Cristian DE JESUS-Salas
**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**      Blue Motorola
Model: Moto E
With no identifying numbers or features
Seized from Juan Pablo HERNANDEZ-Rosales
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 27, 2023, up to and including September 27, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.